IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CABELA'S LLC,

    Plaintiff,

v.

MATTHEW HIGHBY and MOLLY
HIGHBY,

    Defendants.

C.A. No. 18-cv-1223-RGA

MEMORANDUM ORDER

Presently before the Court is Defendants' motion to dismiss based on lack of personal jurisdiction and improper venue, or in the alternative, to transfer to the District of Nebraska. (D.I. 5). I have considered the parties' briefing. (D.I. 6, 15, 18). I heard oral argument on October 24, 2018. (D.I. 67).

## I. BACKGROUND

On July 31, 2018, Cabela's brought an action against Matthew Highby, Molly Highby, and Highby Outdoors, LLC (collectively "Defendants") in the Court of Chancery of the State of Delaware. (D.I. 1 ¶ 1). On August 9, 2018, Defendants removed the case from the Court of Chancery to this Court. (*Id.* at 5). On August 17, 2018, Defendants brought this motion to dismiss. Cabela's has voluntarily dismissed without prejudice its claims against Highby Outdoors, LLC. (D.I. 17).

## II. ANALYSIS

### A. Consent to Personal Jurisdiction and Venue

Under Federal Rule of Civil Procedure 12(b)(2), a court must dismiss a case when it lacks personal jurisdiction over the defendant. Consent is one of the traditional bases for personal jurisdiction. *Burnham v. Superior Court of Cal., Cty. of Marin*, 495 U.S. 604, 617–18 (1990); *see also* 4 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1064 (3d ed. 2002). The central dispute here is whether Defendants have consented to Delaware jurisdiction and venue through prior agreements with Cabela's.

The remaining Defendants, Matthew and Molly Highby, are former Cabela's employees. While employed, Cabela's periodically offered Defendants stock options and/or restricted stock units in exchange for entering into a Proprietary Matters Agreement ("PMA"). (D.I. 1-1 ¶ 21). Defendants each entered into a PMA with Cabela's in March 2016. The PMAs are substantively identical. (D.I. 1-1, Exs. 1–2). Paragraph 16 of the PMA provides:

> (b) *Jurisdiction, Venue, and Governing Law.* As a corporation organized under the laws of the State of Delaware, Cabela's has an interest in having Delaware law applied to contracts with its employees, as well as disputes with them. Applying Delaware law in this fashion affords the parties predictability as to the law to be applied, as well as uniformity across Cabela's workforce. Consequently, this Agreement shall be considered executed and performable in Delaware and shall be governed by the laws of the State of Delaware, without regard for the conflicts of laws rules of Delaware or any other state. *Any action relating to or arising out of this Agreement shall be brought only in a court of competent jurisdiction located in Delaware and the parties expressly consent to such venue. Employee consents to the personal jurisdiction of the courts located in Delaware over him or her.*
>
> (c) *Survival. Employee's obligations hereunder shall survive the termination of Employee's employment with Company* or any of its affiliates or termination of any other agreement or relationship between Employee and Company, and shall, likewise, continue to apply and be valid notwithstanding any change in the Employee's duties, responsibilities, position, or title. Nothing in this Agreement shall eliminate, reduce, or otherwise remove any legal duties or obligations that Employee would otherwise have to the Company through common law or statute.

(D.I. 1-1, Ex. 1 ¶ 16 (emphasis added)).

2

In 2018, upon deciding to terminate their employment, Defendants each entered into a Confidential Severance Agreement and General Release ("Severance Agreement") with Cabela's. (D.I. 1-1 ¶ 31). Again, the Severance Agreements are substantively identical. (D.I. 1-1, Exs. 4–5). The relevant paragraphs of the Severance Agreement provide:

> 17. Complete Agreement. *This Agreement is a complete agreement between the parties and supersedes all prior discussions, negotiations, and agreements with regard to the subject matter herein, whether oral or written. However, Employee agrees that this Agreement shall not in any way affect, modify, or nullify any agreement(s) Employee may have entered into with Cabela's that obligate Employee to protect Cabela's confidential information and/or to refrain from soliciting Cabela's employees or customers after Employee's employment is terminated, and/or to assign intellectual property to Cabela's, and that any such obligations contained in those agreement(s) remain in full force and effect to the extent permitted by law.* This Agreement shall not be modified except by mutual agreement, in writing and signed by both parties. This Agreement shall be binding upon and for the benefit of the parties and their respective heirs, executors, administrators, successors, devisees, permissible assigns, personal representatives, and legal representatives.
>
> . . . .
>
> 20. Applicable Law. As a limited liability company organized under the laws of the State of Delaware, Cabela's has an interest in having Delaware law applied to contracts with its employees, as well as disputes with them. Applying Delaware law in this fashion affords the parties predictability as to the law to be applied, as well as uniformity across Cabela's workforce. *Consequently, this Agreement shall be considered executed and performable in Delaware and shall be governed by the laws of the State of Delaware, without regard for the conflicts of laws rules of Delaware or any other state.*

(D.I. 1-1, Ex. 4 ¶¶ 8, 17, 20 (emphasis added)). Notably, the Severance Agreement does not have the same provisions on consent to personal jurisdiction and venue as in the PMA.

Cabela's argues that Defendants have consented to this Court's jurisdiction and venue in the PMA. (D.I. 15 at 6–8). Defendants argue that the PMA did not survive Defendants' termination of employment at Cabela's. (D.I. 5 at 12). Alternatively, Defendants also argue that the Severance Agreement supersedes the PMA. (*Id.* at 13–15).

3

## 1. Survival

The PMA has an explicit "Survival" provision, which states, "Employee's obligations hereunder shall survive the termination of Employee's employment with Company . . . ." (D.I. 1-1, Ex. 1 ¶ 16(c)). Defendants argue, however, that consent to jurisdiction and/or venue is not an "obligation," and thus did not survive termination of employment. (D.I. 6 at 12). Defendants rely on the Black's Law Dictionary definition of "obligation" as "[a] legal or moral duty to do or not do something," which "may refer to anything that a person is bound to do or forbear from doing." (*Id.*).

I do not think Defendants' proposed definition of "obligation" excludes consent to jurisdiction and/or venue. By consenting to personal jurisdiction and venue of the Delaware courts, Defendants are bound to forbear from arguing lack of personal jurisdiction or venue in those courts, assuming the action is otherwise within the scope of the PMA. Defendants do not explain why such forbearance would not meet their definition of "obligation." Therefore, I find Defendants' consent to jurisdiction and/or venue is an "obligation" that survived Defendants' termination of employment at Cabela's.

## 2. Supersession

Defendants argue, in the alternative, that any consent in the PMA was later superseded by the Severance Agreement. Paragraph 17 of the Severance Agreement provides that the Severance Agreement "is a complete agreement between the parties and supersedes all prior discussions, negotiations, and agreements with regard to the subject matter herein." (D.I. 1-1, Ex. 4 ¶ 17). But, paragraph 17 also provides an explicit carve-out to the supersession.

> However, Employee agrees that this Agreement shall not in any way affect, modify, or nullify *any agreement(s)* Employee may have entered into with Cabela's that obligate Employee to protect Cabela's confidential information and/or to refrain from soliciting Cabela's employees or customers after Employee's employment is terminated, and/or to

4

assign intellectual property to Cabela's, and that *any such obligations contained in those agreement(s)* remain in full force and effect to the extent permitted by law.

(*Id.* (emphasis added)). Cabela's argues that the plain language of the Severance Agreement preserves the PMA—the carve-out preserves agreements that obligate Defendants to "protect Cabela's confidential information," which the PMA does, among other things. (D.I. 15 at 11 (quotation marks omitted)). Defendants do not dispute that the PMA includes obligations that overlap with those listed in the carve-out. (D.I. 6 at 13). Instead, Defendants argue that the use of lowercase "agreements" and "such obligations" indicates that paragraph 17 only preserved those obligations in the PMA that are specifically listed in the carve-out. Since consent to personal jurisdiction and venue are not listed, Defendants argue that the Severance Agreement supersedes those provisions of the PMA. (*Id.*).

Defendants rely on the principle of *expressio unius est exclusio alterius*—the "expression of one thing is the exclusion of another." *See Brown v. State*, 36 A.3d 321, 325 (Del. 2012). Defendants argue that the Severance Agreement, by naming specific provisions in the carve-out, supersedes any unnamed provisions. (D.I. 6 at 13). This principle alone, however, does not govern contract interpretation. The Delaware Supreme Court has provided:

> The Court will interpret clear and unambiguous terms according to their ordinary meaning. Contract terms themselves will be controlling when they establish the parties' common meaning so that a reasonable person in the position of either party would have no expectations inconsistent with the contract language. A contract is not rendered ambiguous simply because the parties do not agree upon its proper construction. Rather, an ambiguity exists when the provisions in controversy are fairly susceptible of different interpretations or may have two or more different meanings. Where a contract is ambiguous, the interpreting court must look beyond the language of the contract to ascertain the parties' intentions.

*GMG Capital Invs., LLC v. Athenian Venture Partners I, L.P.*, 36 A.3d 776, 780 (Del. 2012).

As a matter of contract interpretation, I do not find Defendants' arguments compelling. The carve-out explicitly preserves "any agreement(s) Employee may have entered into with

5

Cabela's that obligate Employee to" do, or refrain from doing, the listed actions. Defendants argue that the final clause of the carve-out—"any such obligations contained in those agreement(s) remain in full force and effect to the extent permitted by law"—limits "any agreement(s)" to the specific obligations listed in the carve-out, as opposed to whole agreements. Thus, Defendants argue that the provisions of the PMA not listed in the carve-out, including the jurisdiction and venue provisions, are not preserved and are superseded by the Severance Agreement. I see no reason, based on a plain reading of the Severance Agreement, why "any agreement(s)" should be so limited. The phrase "any such obligations contained in those agreements" is most reasonably understood to mean *all* the obligations contained in "those agreements," not just the obligations that are listed in the carve-out. I do not think the contract language is "fairly susceptible" to Defendants' interpretation. Therefore, I find that the Severance Agreement preserves all of Defendants' obligations under the PMA, including the consent to personal jurisdiction and venue.

## B. Transfer under *Atlantic Marine*

Four factors guide the Court's analysis for transfer under 28 U.S.C. § 1404(a).[1]

> (1) the amount of deference to be afforded to plaintiffs' choice of forum; (2) the availability of an adequate alternative forum where defendants are amenable to process and plaintiffs' claims are cognizable; (3) relevant 'private interest' factors affecting the convenience of the litigants; and (4) relevant 'public interest' factors affecting the convenience of the forum.

*Collins v. Mary Kay, Inc.*, 874 F.3d 176, 186 (3d Cir. 2017) (discussing *forum non conveniens*). This analysis is altered by the PMA's forum-selection clause. *Id.* "[B]ecause the overarching consideration under § 1404(a) is whether a transfer would promote the interest of justice, a valid

---

[1] Section 1404(a) of the federal venue statute codified the doctrine of *forum non conveniens* for cases in which the transferee forum is within the federal court system. *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 60 (2013).

6

forum-selection clause should be given controlling weight in all but the most exceptional cases." *Atl. Marine*, 571 U.S. at 63 (quotation marks and brackets omitted). A court "must deem the private-interest factors to weigh entirely in favor of the preselected forum" and "may consider arguments about public-interest factors only." *Id.* at 64. As the party resisting application of the forum-selection clause, Defendants bear the "heavy burden" of showing that public-interest factors "overwhelmingly" favor transfer to the District of Nebraska. *Id.* at 67; *Collins*, 874 F.3d at 186–87.

First, Defendants argue that a Nebraska court is more likely to be familiar with the Nebraska Trade Secrets Act. (D.I. 6 at 20). Cabèla's counters that courts routinely apply foreign law, and it would be particularly easy to do so here because both Nebraska and Delaware have implemented the Uniform Trade Secrets Act. (D.I. 15 at 17). Cabela's also notes that Defendants appear to advocate for the application of Delaware law, meaning a Nebraska court would also have to apply foreign law. (*Id.*). I believe Plaintiff is correct, at least with respect to the Severance Agreement—Defendants acknowledge that the Severance Agreement includes a Delaware choice of law provision and argue that the Severance Agreement supersedes all prior agreements between the parties. (D.I. 6 at 5–6, 13). Therefore, I do not think familiarity with Nebraska law weighs in favor of transfer.

Second, Defendants argue that Sidney, Nebraska has a strong local interest in resolving this case because it was home to Cabela's headquarters. (D.I. 18 at 9–10). Since Cabela's left Sidney, hundreds of employees were laid off and the Sidney City Council agreed to invest $500,000 in Highby Outdoors, LLC. (*Id.*).

Third, Defendants argue that Nebraska public policy limits post-employment restraints, and thus Nebraska law governs enforcement of the PMA noncompetition clause. (*Id.* at 10 &

n.4). This is a choice-of-law argument. In the context of transfer, the argument boils down to Nebraska's interest in applying Nebraska law, which I already found does not favor transfer.

The only public interest factor that weighs in favor of transfer is the local interest of the city of Sidney. Sidney's interests are derived from being home to Cabela's former headquarters and having a modest investment in Highby Outdoors. These interests do not seem on par with those that courts have found sufficient to overcome a forum-selection clause under *Atlantic Marine*. *See Stewart v. Am. Van Lines*, 2014 WL 243509 (E.D. Tex. Jan. 21, 2014) (finding no valid forum-selection clause where the forum was governed by federal statute); *Bronstein v. U.S. Customs & Border Prot.*, 2016 WL 861102 (N.D. Cal. Mar. 3, 2016) (same); *Credit Suisse AG v. Appaloosa Inv. Ltd. P'ship I*, 2015 WL 5257003 (S.D.N.Y. Jan. 20, 2017) (refusing to enforce a forum-selection clause that would require separating two actions between which there was a "palpable conflict"); *Bollinger Shipyards Lockport, LLC v. Huntington Ingalls Inc.*, 2015 WL 65298 (E.D. La. Jan. 5, 2015) (refusing to enforce a forum-selection clause where the case had already been litigated in the current forum for over six years); *Kettler Int'l, Inc. v. Starbucks Corp.*, 55 F. Supp. 3d 839, 850–51 (E.D. Va. 2014) (finding defendant had waived enforcement of the forum selection clause by filing a third-party complaint in a different forum). Therefore, I find Defendants have failed to satisfy their "heavy burden" of showing that public interest factors "overwhelmingly" favor transfer to the District of Nebraska.

## III. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss, or in the alternative, to transfer to the District of Nebraska (D.I. 5), is **DENIED**.

IT IS SO ORDERED this 26 day of November 2018.

*[signature]*
United States District Judge

8